**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

**MARIANNE HANZL,**

        Plaintiff,

vs.

**ROBERT L. COLLIER and
GERTRUD M. COLLIER**,

        Defendants.

**No. 10-CV-4122-DEO**

**ORDER ON REPORT AND
RECOMMENDATION**

_____

Before the Court and on file at Docket #42 is the Report
and Recommendation ("R&R") issued by Magistrate Judge Leonard
T. Strand concerning the Plaintiff's Motion to Enforce
Settlement. Docket #34. The Magistrate recommended enforcing
the settlement in the manner argued by the Plaintiff, Marianne
Hanzl [hereinafter the Plaintiff]. Robert and Gertrud Collier
[hereinafter the Defendants] filed a timely Objection to the
Report and Recommendation. Docket #44.

The parties appeared telephonically for hearing on the
Objection on January 30, 2013. After conferring with the
parties, the Court allowed the Plaintiff additional time to
file a written response to the Defendants' Objection. The
Plaintiff filed a response on February 3, 2013. The parties
appeared for a second telephonic hearing on February 26, 2013.

After listening to the parties' arguments, the Court took the matter under advisement and now enters the following:

## I.  FACTS

Magistrate Strand set out the relevant facts in his Report and Recommendation.  Accordingly, the Court incorporates the fact section contained in Docket #42, including the relevant facts from the evidentiary hearing conducted by Judge Strand, into this order.

Briefly, the situation is as follows:  the Plaintiff, Marianne Hanzl, lives in Germany.  She bought a vacation home in Arizona and became acquainted with the Defendants while in Arizona.  They became friends.  Eventually, the Plaintiff decided to sell her home in Arizona.  She executed the appropriate paperwork allowing the Defendants to sell the home on her behalf.

The Defendants sold the Arizona home; however, they did not transfer the money to the Plaintiff.  After a lengthy period of back and forth, during which the Defendants purchased the Sioux City property at issue in this case, the Plaintiff decided that the Defendants were not going to give her the money for the Arizona home and filed the present suit.

Eventually, the parties had a settlement conference and reported to the Court that they had reached a settlement.[1] The parties agree that under terms of the agreement, Defendants were to pay the Plaintiff $262,500. The agreement gave the Defendants six months to sell their property in Sioux City. The parties agree that under the agreement, if the Defendants did not sell the property within six months or otherwise pay the Plaintiff, they would tender her the deed for the property.

Unfortunately, the agreement was not formally memorialized. The six months passed and the Defendants did not sell the property. The Defendants did vacate the property and allowed the Plaintiff to begin trying to sell it on her own.

## II. ISSUE

All of the facts discussed above appear relatively undisputed. The issue presently before the Court is the effect of the Defendants providing the Plaintiff the deed for

---

[1] The evidence regarding the agreement is based upon the statements of the attorneys in this case, the communications they had with each other, and the evidence collected by the Magistrate during an evidentiary hearing.

the property.  Specifically, the parties dispute whether tendering the deed for the property would completely satisfy the Defendants' debt to the Plaintiff, or if the Defendants would be required to pay the difference of any shortfall between the value of the property and the $262,500.  The Plaintiff argues that the settlement was for $262,500, with the property acting as a type of security for that debt.  The Plaintiff maintains that the Defendants owe $262,500 and must pay her the difference between that number and the net sale price of the Sioux City property if the sale is for less than $262,500.  The Defendants argue that the settlement was for $262,500 or, after six months, the deed for the Sioux City property.  The Defendants argue that giving the Plaintiff the Sioux City property satisfies their obligation completely.

In his Report and Recommendation, the Magistrate agreed with the Plaintiff and ordered the Defendants to pay the difference between the net sale price the property and $262,500.[2]

---

[2] The Magistrate also denied an award of attorney's fees.  No objection was filed to that portion of the Report and Recommendation, and the Court adopts it without further comment.

## III.  STANDARD

Pursuant to statue, this Court's standard of review for a magistrate judge's Report and Recommendation is as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1).

Similarly, Federal Rule of Civil Procedure 72(b) provides for review of a magistrate judge's Report and Recommendation on dispositive motions and prisoner petitions, where objections are made as follows:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommendation decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

FED. R. CIV. P. 72(b).

**IV. ANALYSIS**

The Court has reviewed the Report and Recommendation, along with the entire file, and finds Judge Strand's analysis and recommendations are appropriate and correct.[3]

The parties agree that Iowa law applies in this case. See <u>Barry v. Barry</u>, 172 F.3d 1011, 1013 (8th Cir. 1999) (stating a settlement contract must be construed according to state law in a case based on diversity jurisdiction). Under Iowa law, settlements are favored. See <u>Peak v. Adams</u>, 799 N.W.2d 535, 539 (Iowa 2011) stating that: "Iowa has a strong public policy favoring settlements."

Under Iowa law, basic contract principles apply to this type of dispute.

> Settlement agreements are essentially contracts, and general principles of contract law apply to their creation and interpretation. <u>City of Dubuque v. Iowa Trust</u>, 587 N.W.2d 216, 221 (Iowa 1998); <u>Fees v. Mut. Fire & Auto. Ins. Co.</u>, 490 N.W.2d 55, 58 (Iowa 1992). The intent of the parties controls the interpretation issues. <u>Magina v. Bartlett</u>, 582 N.W.2d 159, 163 (Iowa 1998). In order to be bound, the contracting parties must

---

[3] Although this Court will not set out the Magistrate's entire Report and Recommendation, it is incorporated in its entirety by reference.

> manifest their mutual assent to the terms
> sought to be enforced.  <u>Kristerin Dev. Co.
> v. Granson Inv.</u>, 394 N.W.2d 325, 331 (Iowa
> 1986).

<u>Sierra Club v. Wayne Weber LLC</u>, 689 N.W.2d 696, 702 (Iowa 2004).  "When interpreting contracts, [the Court] may look to extrinsic evidence, including 'the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties.'" <u>Nevada Care, Inc. v. Dep't of Human Servs.</u>, 783 N.W.2d 459, 466 (Iowa 2010) (quoting <u>Fausel v. JRJ Enters., Inc.</u>, 603 N.W.2d 612, 618 (Iowa 1999)).  In interpreting the contract of the settlement agreement "[t]he key is to ascertain the mutual intent of the two parties..."  <u>Peak</u>, 799 N.W.2d at 544.  "[M]utual assent is based on objective evidence, not on the hidden intent of the parties." <u>Schaer v. Webster County</u>, 644 N.W.2d 327, 338 (Iowa 2002).

The Magistrate applied the appropriate legal standard and found that under the terms of the settlement agreement, the Plaintiff is entitled to $262,500.  The Magistrate stated three primary reasons for his conclusion:

First, as of the date of the settlement
conference Hanzl had no basis to know, or
even approximate, the fair market value of
the West Street property.  There is no
evidence that the property was appraised
before the settlement conference...  I do
not believe Hanzl would have simply
accepted the truth of the Colliers' stated
opinion of value.  No rational litigant
would agree to accept property in full
settlement of a claim without having some
basis for at least estimating the value of
that property...  Second, if the Colliers
truly intended the terms of the agreement
to provide that they could fully satisfy
their obligations by simply conveying the
West Street property to Hanzl after six
months, they did a terrible job of
communicating this proposed term.  This is
especially true in light of Hanzl's
rejection, immediately prior to the
discussions at issue, of their offer to
convey the West Street property in full
settlement of this case.  Because Hanzl
rejected an immediate conveyance of the
property to settle her claims, the Colliers
could hardly assume she would accept a
delayed conveyance...  The intention
expressed in the words actually
communicated prevails over a party's secret
intentions.  See, e.g., First Northwestern
National Bank v. Crouch, 287 N.W.2d 151,
153 (Iowa 1980).  Regardless of what the
Colliers now claim they intended or
understood, the words exchanged by the
attorneys during the negotiations fail to
support their position.  Third, having
personally observed both of the Colliers
during their testimony at the hearing, I
have questions about their credibility.
This is especially true with regard to
Gertrud Collier.  She professed to have

virtually no recollection of anything that
happened during the settlement conference,
yet had perfect recall of what she claimed
to be the final terms of settlement.  In
general, any details that would have been
inconvenient for her to recall were
forgotten, while helpful details were
perfectly clear ... based on her demeanor
and the content of her answers, I afford
virtually no weight to Gertrud's testimony.
For all of the reasons discussed herein,
I recommend entry of an order of specific
performance in favor of Hanzl with regard
to the following, agreed settlement terms:
Hanzl is entitled to payment in the amount
of $262,500.

Docket #42, p. 15-17.

This Court agrees with those conclusions.  First, and most importantly, there simply is no direct evidence that conveying the Sioux City property was meant as a way to fully discharge the Defendants' debt to the Plaintiff.  What is clear from the statements of the attorneys and the evidence gathered by the Magistrate is that the parties agreed to a settlement amount of $262,500.  There is clearly mutual assent to that term.  As stated above, "[t]he key is to ascertain the mutual intent of the two parties..." Peak, 799 N.W.2d at 544. "[M]utual assent is based on objective evidence, not on the hidden intent of the parties."  Schaer, 644 N.W.2d at 338. There is objective evidence that the parties reached a

settlement for the amount of $262,500, and that the Sioux City property was security for the settlement, and the Defendants had six months to raise the money. There is no evidence or reason to believe that there was mutual assent to the clause, advocated by the Defendants, that conveying the Sioux City property after six months would fully satisfy the settlement agreement. Accordingly, the Magistrate correctly found that a complete discharge of the debt for the property was not part of the settlement agreement.

Secondly, it is clear from the testimony that the Defendants offered the Plaintiff immediate possession of the Sioux City property and the Plaintiff rejected that offer. Instead, the Plaintiff demanded $275,000. The Defendants offered $250,000. The obvious middle ground is $262,500. It makes sense that $262,500 was the agreement amount reached by the parties, and is the outcome they *intended* to reach. It does not make sense the Plaintiff would abandon her demand for a certain amount in favor of getting the property *after six months*. This is especially true considering the Plaintiff's situation. The Sioux City property had not been appraised. The Plaintiff is elderly and lives in Germany. Her counsel,

fluent in German, practices in Florida and is admitted in this case pro hac vice. There is no reason to believe that either the Plaintiff or her attorney would be in a position to speculate as to the value of property in Northwest Iowa.[4]

Considering the history the parties have had with each other, it defies logic to construe the existence of a settlement agreement contingent upon the Plaintiff taking on faith the Defendants' representations regarding the value of the Sioux City property. It is not believable that this was the intent of the parties at the time the agreement was reached. As stated above, in determining the meaning of a contract, the Court may look to the situation and relations of the parties. The Magistrate's conclusions are supported by both the evidence and the situation of the parties.

Finally, the Magistrate stated that he did not find the Defendants credible. This is a de novo review. However, this Court is deferential to the conclusions of the lower Court when the lower Court had the opportunity to directly observe

---

[4] It is true the Plaintiff knew the amount the Defendants originally paid for the property. But, it is common knowledge that property prices have declined markedly since the great recession.

11

the demeanor of the witnesses.  Based upon the unlikely nature of the Defendants' representations, this Court agrees with the Magistrate's conclusions.

**V.   CONCLUSION**

This Court accepts Judge Strand's Report and Recommendation.  Accordingly:

1.   Based on the settlement agreement reached at the April 24, 2012, settlement conference, Hanzl is entitled to payment in the amount of $262,500 in full satisfaction of all claims against the defendants in this case.

2.   Because the Colliers did not make that payment to Hanzl within 180 days, Hanzl is entitled to a deed to the West Street property to permit her to sell that property (subject to the requirement of good faith and fair dealing.   The Colliers shall deliver a fully-executed deed to Hanzl's counsel, conveying marketable title to the West Street property to Hanzl, <u>within fifteen days of this Order</u>.   Hanzl shall then undertake reasonable efforts to sell the West Street Property.

3.   Within 20 days after closing on her sale of the West Street property, Hanzl shall file a status report that

includes a complete itemization of the gross sale price, the transaction-related expenses and the net sale proceeds. If the Colliers object to the transaction on grounds that it is not a good faith, arms-length transaction, they shall file their objections within 20 days after Hanzl files her status report and itemization.

4. Regardless of whether the Colliers file objections to the sale, if the net sale proceeds exceed $262,500, Hanzl shall pay the excess to the Colliers no later than 20 days after closing on her sale of the West Street property.

5. If the net sale proceeds are less than $262,500, judgment will be entered against both defendants, jointly and severally, for the amount of the deficiency, unless the court adjusts the amount of the deficiency based on any objections the Colliers file with regard to the sale of the property.

6. Finally, Hanzl's request for an award of attorney fees is denied.

**IT IS SO ORDERED** this 8th day of March, 2013.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa