# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| MARIANNE HANZL,<br><br>    Plaintiff,<br><br>vs.<br><br>GERTRUD M. COLLIER and<br>ROBERT L. COLLIER,<br><br>    Defendants. | No. C10-4122-DEO<br><br>**REPORT AND<br>RECOMMENDATION** |

## TABLE OF CONTENTS

*I.*   *Relevant Factual and Procedural Background*........................................*2*

*II.*   *The Sale* ...........................................................................................*4*

*III.*  *Findings of Fact*............................................................................*5*

*IV.*  *Discussion* ...................................................................................*8*
    *A.*   *Can Hanzl Deduct Any Amount Of Mr. Jackson's Fees From The*
        *Sale Price?*.........................................................................*8*
    *B.*   *What Is The Appropriate Amount To Deduct?*...........................*11*
    *C.*   *The Remaining Issue (Income Taxes)*......................................*15*

*V.*   *Recommended Disposition* ...............................................................*15*

This case is before me on a motion (Doc. No. 58) by plaintiff Marianne Hanzl for entry of a preliminary deficiency judgment against defendants Gertrud Collier and Robert Collier (the Colliers).[1] The Colliers have filed a resistance (Doc. No. 63) and Hanzl has filed a reply (Doc. No. 68). I conducted a telephonic hearing on January 28, 2014. Michael Jackson appeared for Hanzl and Tod Deck appeared for the Colliers. The matter is now fully submitted with the exception (to be discussed *infra*) of an issue concerning Hanzl's potential income tax liability. That issue is reserved for later argument and resolution, as necessary.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This case presents factual and procedural circumstances that are somewhat unique. The facts that led to the filing of this lawsuit are detailed in my prior report and recommendation (Doc. No. 42) and Judge O'Brien's prior order (Doc. No. 52) accepting that document. Basically, Hanzl – a resident of Germany – alleged that the Colliers helped her sell her home in Arizona and then helped themselves to the proceeds. Hanzl alleged that they then used those funds to purchase a home in Sioux City (the West Street Property).

Hanzl sued to recover the allegedly-stolen funds. On April 24, 2012, the parties participated in a settlement conference with then-Chief Magistrate Judge Paul A. Zoss. *See* Doc. No. 32. At the end of the conference, counsel advised Judge Zoss that the matter was settled. Judge Zoss then entered an order (Doc. No. 33) staying the case for seven months to allow the parties time to implement the settlement agreement.

On October 16, 2012, Hanzl filed a motion (Doc. No. 34) to enforce the settlement agreement. The Colliers resisted and I conducted an evidentiary hearing on December 12, 2012. I then filed my report and recommendation which, basically, recommended

---

[1] The motion was filed as a status report, in accordance with Judge O'Brien's order (Doc. No. 52) of March 8, 2013. Because the status report includes a request for relief, and because the Colliers object to that request, it has been docketed as a motion.

that Judge O'Brien grant Hanzl's motion. Judge O'Brien adopted my report and recommendation, directing as follows:

> 1. Based on the settlement agreement reached at the April 24, 2012, settlement conference, Hanzl is entitled to payment in the amount of $262,500 in full satisfaction of all claims against the defendants in this case.
>
> 2. Because the Colliers did not make that payment to Hanzl within 180 days, Hanzl is entitled to a deed to the West Street property to permit her to sell that property (subject to the requirement of good faith and fair dealing). The Colliers shall deliver a fully-executed deed to Hanzl's counsel, conveying marketable title to the West Street property to Hanzl, within fifteen days of this Order. Hanzl shall then undertake reasonable efforts to sell the West Street Property.
>
> 3. Within 20 days after closing on her sale of the West Street property, Hanzl shall file a status report that includes a complete itemization of the gross sale price, the transaction-related expenses and the net sale proceeds. If the Colliers object to the transaction on grounds that it is not a good faith, arms-length transaction, they shall file their objections within 20 days after Hanzl files her status report and itemization.
>
> 4. Regardless of whether the Colliers file objections to the sale, if the net sale proceeds exceed $262,500, Hanzl shall pay the excess to the Colliers no later than 20 days after closing on her sale of the West Street property.
>
> 5. If the net sale proceeds are less than $262,500, judgment will be entered against both defendants, jointly and severally, for the amount of the deficiency, unless the court adjusts the amount of the deficiency based on any objections the Colliers file with regard to the sale of the property.
>
> 6. Finally, Hanzl's request for an award of attorney fees is denied.

*See* Doc. No. 52 at 12-13.

## II. THE SALE

Hanzl filed her status report (Doc. No. 58) on November 14, 2013. According to that report, Hanzl was able to sell the West Street Property for a gross sales price of $275,000. The report itemizes various transaction-related expenses totaling $51,431.62, resulting in net proceeds of $223,568.38. Those expenses include a real estate commission of $16,000 and over $24,000 in attorney fees for services provided by Hanzl's counsel, Mr. Jackson. Based on the claimed expenses, the deficiency judgment against the Colliers would be $38,931.62. However, Hanzl noted that because the federal income tax consequences arising from the sale have not yet been determined, it is possible her net proceeds, after taxes, will be lower because of those consequences. As such, she requests a preliminary finding that the deficiency is $38,931.62, subject to adjustment prior to entry of final judgment.

The Colliers filed objections (Doc. No. 63) on December 24, 2013. Generally, they take issue with the claimed selling expenses on grounds that Hanzl did not submit supporting documentation. In addition, they complain that Hanzl has no right to recover any amount of attorney fees, contending that this case does not present a situation in which attorney fees may be recovered under Iowa law. They also point out that Hanzl paid a real estate commission of $16,000 and question why the sale of a single-family home required both a real estate commission and over $24,000 in transactional attorney fees.

In her reply, supported by Mr. Jackson's affidavit, Hanzl stresses that the efforts of her attorney were crucial, as she lives in Germany and does not speak English. She also states that those efforts were beneficial, as he was able to negotiate a much-higher price for the West Street Property. She notes that the listing agent originally listed the property at $199,000 and repeatedly encouraged Hanzl to accept offers far below $275,000. She also argues that the Colliers made the process cumbersome in various ways. For example, while the Colliers were in possession of an appraisal indicating that

the West Street Property was worth $282,000, they refused for a period of time to provide that appraisal to Hanzl's counsel. She contends that this delay, combined with the recommendations provided by the listing agent, made it extremely difficult to negotiate the final sale price of $275,000. She states that but for the efforts of her attorney, the sale price would have been far less than that amount and the resulting deficiency judgment against the Colliers much higher. Finally, she notes that the amount of attorney fees actually increased since she filed her status report, as her attorney's final invoice concerning the transaction had not been added. She has increased the claimed amount of attorney fees, and thus the claimed selling expenses, by $3,600.00. This would result in a preliminary deficiency of $42,531.62.

At the conclusion of the telephonic hearing on January 28, 2014, I requested that Hanzl's counsel file two additional documents (a supplemental affidavit and a HUD-1 statement with one previously-redacted line uncovered). *See* Doc. No. 70. Those materials were filed January 28, 2014. *See* Doc. Nos. 71-1 and 72.

### III. FINDINGS OF FACT

Based on the evidence presented in connection with the present motion, and the record made during the evidentiary hearing on December 12, 2012, I make the following finding of fact relevant to the pending issues:

Pursuant to Judge O'Brien's prior order (Doc. No. 52), the settlement agreement between Hanzl and the Colliers gives Hanzl the right to receive $262,500. While the Colliers had ample opportunity after the settlement agreement was formed to sell the West Street Property in order to raise funds, they took no meaningful steps to do so. Moreover, the Colliers took affirmative steps to make it more difficult to sell the property by removing cabinetry and appliances and, generally, leaving the property in poor condition.

The Colliers did, at least, comply with Judge O'Brien's order by deeding the West Street Property to Hanzl. Hanzl provided a power of attorney to Mr. Jackson for purposes of listing and selling that property. Mr. Jackson listed the property with a Century 21 real estate agent in Sioux City and was advised by the agent that the property was worth no more than $180,000. Mr. Jackson arranged for an independent appraisal of the property, which indicated a value of only $160,000. Based on that appraisal, and in light of the opinion provided by the Century 21 agent, Mr. Jackson authorized the agent to put the property on the market on July 5, 2013, at an asking price of $199,000.

Before making that decision, Mr. Jackson wrote to the Colliers' counsel, Mr. Deck, on June 21, 2013. In that communication he disclosed his intention to list the property at $199,000, asked that the Colliers return cabinetry and appliances they had previously removed from the West Street Property, and requested certain information that could be useful in selling the property (*e.g.,* information about the septic system). Mr. Deck did not respond until July 10, 2013, after the property had already been listed at $199,000.

Mr. Deck advised Mr. Jackson that the Colliers were opposed to the listing price, that they would not return the cabinetry or appliances and that they had not given Mr. Deck the requested information about the property. Mr. Deck also provided, for the first time, part of an appraisal the Colliers had obtained on April 1, 2013, which indicated that the property's market value was $282,000 (the Collier Appraisal). When Mr. Jackson inquired as to why the Collier Appraisal had not been provided earlier, Mr. Deck stated that the Colliers had instructed him not to disclose it to Hanzl or her counsel.

Because the Collier Appraisal suggested a fair market value dramatically higher than $199,000, Mr. Jackson directed the Century 21 agent to take the West Street Property off the market to allow for further investigation. The property was on the market for a total of five days at the $199,000 price. Several offers were then submitted by potential buyers who had viewed the property during that time. The agents for the potential buyers were told of the higher, Collier Appraisal and were asked to have their

clients submit new offers in light of that appraisal. A total of six offers were submitted, with various terms and with proposed sale prices ranging from $175,000 to $235,000. *See* Doc. No. 58 at 9. Mr. Jackson directed Century 21 to reject all of those offers and to place the property back on the market at a new price of $285,000. That occurred on July 30, 2013.

No new offers were submitted. However, Mr. Jackson negotiated with one of the six previous offerors over a period of several weeks, eventually reaching agreement on a final sales price of $275,000. The transaction closed on October 25, 2013. The Colliers acknowledge, and I find, that the transaction was an arms-length transaction and was at a fair and reasonable price.

Hanzl seeks to deduct the following expenses from the gross sale price to determine the amount that must be credited against the $262,500 the Colliers owe to her:

| | | |
|---|---|---|
| a) | County Property Taxes: | $3,569.47 |
| b) | September Tax Sale Redemption (Parcel 1): | $2,206.00 |
| c) | September Tax Sale Redemption (Parcel 2): | $309.00 |
| d) | 1st Half 2012 / 2013 Taxes (Parcel 1): | $1,971.00 |
| e) | 1st Half 2012 / 2013 Taxes (Parcel 2): | $248.00 |
| f) | Real Estate Commission Fees: | $16,000.00 |
| g) | Broker Administration Fee: | $185.00 |
| h) | Settlement/Closing Fee: | $150.00 |
| i) | Abstract: | $348.00 |
| j) | Document Preparation Fee: | $375.00 |
| k) | Fees Related to Management and Oversight of Sale of Property: | $28,240.00 |
| l) | City of Sioux City (electricity charges): | $62.53 |
| m) | MidAmerican Energy (propane charges): | $132.42 |
| n) | Cleaning Service for Property Prior to Sale: | $325.00 |
| o) | Appraisal Prior to Listing: | $400.00 |
| p) | State Tax Stamps: | $439.00 |
| q) | Record Affidavits: | $46.00 |
| r) | Wire Fee: | $25.00 |

Doc. No. 58 at 2-4; Doc. No. 68 at 4. These claimed expenses, which are supported by the Jackson affidavits and other evidence in the record (particularly the HUD-1 closing

statement), total $55,031.42. I find that all of these expenses have actually been paid by Hanzl in connection with the West Side Property. Moreover, with the exception of item (k) ("fees related to management and oversight"), I find that there is no legitimate dispute as to whether the expenses should be deducted as reasonable, transaction-related expenses.[2] The fighting issue, which I will address below, is whether Hanzl is entitled to deduct all or part of Mr. Jackson's fees, even if they are transaction related.

According to Mr. Jackson's invoices and affidavits, he has billed Hanzl $28,240.00 for his services in connection with the West Street Property. I will provide additional findings concerning these billings in Section (IV)(B), *infra*.

## IV. DISCUSSION

### A. Can Hanzl Deduct Any Amount Of Mr. Jackson's Fees From The Sale Price?

In analyzing this disputed issue, it is important to be mindful of its context. This court has found that the terms of the parties' settlement agreement were as follows:

> [T]he parties reached an oral agreement to settle the case for the fixed sum of $262,500, payable in 180 days. They further agreed that Hanzl would be entitled to the West Street property if the Colliers did not pay the settlement amount within 180 days and that she would then sell the property. The parties did not, however, agree that giving Hanzl a deed to the West Street property would fully-satisfy the Colliers' obligation under the agreement. Instead, and as Deck wrote to Jackson on May 25, 2012, the Colliers were to give Hanzl a deed "as security for the settlement." Pl. Ex.

---

[2] During the hearing, Mr. Deck stated that his clients generally object to the concept of deducting *any* expenses from the gross sales price. No coherent argument has been presented in support of their apparent argument that the entire amount of the gross sales price ($275,000) should be credited to them, without regard to the fact that Hanzl did not realize that amount from the sale. Of course, under this less-than-half-baked theory, Hanzl would owe the Colliers $12,500. The Colliers' request for this outcome is nonsense and is summarily rejected. Also, Mr. Deck stated during that hearing that Ms. Collier believes some of the past property taxes reflected in the HUD-1 closing statement had previously been paid by the Colliers. The Colliers have had more than two months to produce evidence of any inaccuracies in the closing statement. If they actually paid any of the property taxes at issue, it should have been easy to produce proof. They didn't.

8

> 3. The agreed settlement is for payment to Hanzl in the amount of $262,500. Hanzl is entitled to receive nothing more and nothing less. Just as when a secured creditor sells collateral after a default, if the net proceeds of a sale exceed the amount owed, the excess will go to the debtors (the Colliers). But if the net proceeds are less than the amount owed, the Colliers will remain liable for the deficiency.

Doc. No. 42 at 13-14 (as adopted by Doc. No. 52) [footnote omitted]. The West Street Property was, simply, collateral. The Colliers could have sold it themselves during the initial 180-day period and used those proceeds to help fund the agreed settlement payment. Had they done so, the proceeds that would have been available for them to apply to the settlement payment would have been the net proceeds; *i.e.,* the final amount paid to them after payment of all transaction-related expenses. Had they sold the property at a gross sales price of $250,000, the sale would not have generated that amount of cash for them to apply to the agreed settlement amount. Instead, the sale would have resulted in some lesser amount, after payment of expenses.

If the Colliers would have taken the opportunity to sell the West Street Property themselves, they would have had some level of control over the sales price and the costs of sale. Instead, for reasons that are not clear, they elected to delegate the task of selling the property to Hanzl – an elderly, non-English speaking German resident. Regardless of who was going to sell the West Street Property, the purpose of that sale remained the same: fund (at least in part) the $262,500 owed to Hanzl. And, in either case, the amount of money available for that purpose would be the net amount, after all costs of sale. Conceptually, then, deducting transaction-related expenses remains appropriate despite the fact that Hanzl, rather than the Colliers, is the seller.

The Colliers take issue, however, with the characterization of Mr. Jackson's fees as being appropriate, deductible transaction-related expenses. They note that this court previously rejected Hanzl's request for an award of attorney fees. They also point out that under Iowa law, a prevailing party in litigation is entitled to recover that party's attorney fees only when authorized by contract or statute. *See, e.g., Dier v. Peters*, 815

9

N.W.2d 1, 10 (Iowa 2012). While that rule applies to fees incurred by the prevailing party in a pending lawsuit, the Iowa Supreme Court has recognized that attorney fees incurred for other reasons may be recoverable as consequential damages. For example, when an actor's tort or breach causes another person to be subjected to litigation, the attorney fees incurred in that litigation may be recovered as damages against the actor. *See, e.g., Clark-Peterson Co. v. Independent Ins. Associates, Ltd.*, 514 N.W.2d 912, 917 (Iowa 1994); *Kimmel v. Iowa Realty Co.*, 339 N.W.2d 374, 380 (Iowa 1983). Similarly, when a seller of real estate breaches the covenant of title, the aggrieved buyer may recover the attorney fees and expenses incurred in defending title. *See, e.g., Gaede v. Stansberry,* 779 N.W.2d 746, 749 (Iowa 2010). Thus, while the Colliers advance a correct statement of Iowa law, that statement is not applicable to the attorney fees for which Hanzl seeks credit in this case, as those fees did not arise from Hanzl's prosecution of this lawsuit. This does not mean those fees must be allowed, only that they are not plainly barred by Iowa law.

The Colliers also make reference to draft settlement agreements exchanged between the parties, but not executed, after the settlement conference in this case. Those drafts, in discussing the Colliers' prospective efforts to sell the West Street Property, defined "net proceeds" to be "any costs to be paid by seller under the terms of the purchase agreement or pursuant to law." Doc. No. 63-1 at 2; Doc. No. 63-2 at 2. This argument carries more weight, as the drafts, although never executed, do shed some light on the intent of the parties at the time they formed their settlement agreement. *See, e.g., Peak v. Adams*, 799 N.W.2d 535, 544 (Iowa 2011) (in determining intent the court may consider, *inter alia,* negotiations and statements made therein). There is no evidence that Hanzl objected to this particular language during the parties' efforts to reduce their agreement to writing. Thus, I find the proposed contract language to be significant in construing the scope and limits of the expenses Hanzl may deduct from the gross sales price.

While the draft contract language is significant, it is not entirely-dispositive. As noted, the provisions at issue addressed a sale of the property by the Colliers, not by Hanzl. Doc. No. 63-1 at 2; Doc. No. 63-2 at 2. Had the Colliers chosen to remain in control of the situation by selling the property themselves, these provisions would be of more relevance in calculating the net proceeds. Instead, they chose to delegate the task to Hanzl. No one familiar with Hanzl's situation could be surprised that Hanzl would need assistance with this task. Indeed, this case arose precisely because Hanzl sought the Colliers' assistance in selling a different property (the Arizona house). Given this history, the Colliers could not reasonably have expected that Hanzl would be able to market and sell the West Street Property with only the standard assistance provided by a local realtor. I find that the Colliers' knowledge of the rather-obvious fact that Hanzl would require the assistance of Mr. Jackson, or someone else, is also significant in construing the scope and limits of the expenses Hanzl may deduct from the gross sales price.

In short, nothing about Iowa law, this court's prior orders or the parties' negotiations creates a bright-line rule prohibiting the deduction of Mr. Jackson's fees as transaction-related expenses. The remaining issue is what amount, if any, of those fees can reasonably be deducted from the gross sales price on that basis.

## B.  *What Is The Appropriate Amount To Deduct?*

According to Mr. Jackson's affidavits and invoices, he devoted 70.6 hours, over a period of seven months, to tasks that relate to the West Street Property. He further states that his standard hourly rate is $400 per hour and contends this rate is justified because of his rather-unique skill set as a German-speaking attorney with experience in litigation and real estate law. Thus, he states that he has billed Hanzl $28,240 for tasks relating to the property (rather than this litigation) and that Hanzl is entitled to deduct that entire amount from the gross sales price.

After careful review of Mr. Jackson's invoices, I find that some significant adjustments are required to limit his fees to "transaction-related expenses," as that term is used in this court's prior orders. These adjustments relate to both the tasks performed and the hourly rate charged, as discussed further below. By making these adjustments, I do not intend to suggest, or even hint, that Mr. Jackson engaged in any improper conduct by performing the described tasks or billing Hanzl for them at his standard hourly rate. To the contrary, his conduct throughout this case has been extremely professional and his representation of Hanzl highly-effective. I have no doubt that he performed the described tasks or that his regular hourly rate for legal services is appropriate in his geographic area. In other words, Mr. Jackson was perfectly entitled to bill his client for the described services at his hourly rate. However, the present question is what portion of his fees may be charged against the gross sales price as reasonable, transaction-related expenses.

*Scope of Services*. The services described in Mr. Jackson's invoices were performed between April 2, 2013, and October 25, 2013. Doc. No. 68-4 at 1-26. They included a wide-variety of matters including, generally, legal services, communications with real estate agents and potential buyers, communications with Hanzl and Mr. Deck, and property-management tasks. The property-management tasks included arrangements for the "haying" of the property and communications with utility companies. While it is obvious that Mr. Jackson's efforts were valuable, and significantly increased the final sales price, that positive impact does not transform all such efforts into transaction-related expenses. Based on my review of the invoices, I find that no services performed prior to July 30, 2013, can reasonably be considered as such expenses. Instead, those services were of a preliminary nature. While beneficial, they did not directly relate to the transaction at issue. This adjustment reduces Mr. Jackson's eligible hours from 70.6 to 48.8.

July 30, 2013, is the date that Mr. Jackson instructed the Century 21 agent to increase the listing price in light of the Collier Appraisal. After that point, most of Mr.

12

Jackson's services had a more-direct nexus to the final transaction. One obvious exception involves services provided on August 7, 2013. Those services related to this lawsuit, not the transaction. Removing those services from consideration reduces Mr. Jackson's eligible hours to 45.0.

Having reviewed the invoices and Mr. Jackson's affidavits, and in consideration of the fact that the Colliers were well-aware that Hanzl would need substantial assistance to complete the transaction, I find that 45.0 hours of Mr. Jackson's services can reasonably be classified as being transaction-related.

***Hourly Rate***. As noted above, Mr. Jackson states that his regular hourly rate is $400. He practices in Winter Park, Florida. *See* Doc. No. 68-4. I must determine whether that rate is appropriate for this case.

Because I am not awarding attorney fees to a prevailing party based on a statute or contract, cases addressing that situation are not directly on point. However, I find them to be instructive on the question of whether Mr. Jackson's hourly rate is reasonable in this geographic area. The Eighth Circuit Court of Appeals has stated that a reasonable hourly rate is generally the prevailing market rate in the locale – that is, the "ordinary rate for similar work in the community where the case has been litigated." *Moysis v. DTG Datanet*, 278 F.3d 819, 828–29 (8th Cir.2002) (quoting *Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir.2001)) (internal quotation mark omitted). A party seeking an award of attorney fees at the conclusion of a lawsuit must "produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984).

Mr. Jackson has produced no evidence suggesting that his hourly rate is "in line with" those charged for similar services by lawyers in this area. Mr. Jackson has the benefit of local counsel in this action and, therefore, could have obtained relevant information from Iowa counsel. He did not do so. Based on my own experience as an attorney and, more-recently, a judge in Iowa, I cannot independently conclude that $400

is a reasonable hourly rate in this community for an attorney's services regarding the sale of residential real estate.

Mr. Jackson's experience and ability to speak German made him an excellent choice for Hanzl in this case, but there is no basis for me to find that the transaction-related services he provided in this matter should reasonably be charged against the gross sales price at the rate of $400 per hour. Compounding the problem is the fact that the Colliers, while complaining about Mr. Jackson's hourly rate, have not suggested a more-reasonable rate. For example, they have presented no evidence of Mr. Deck's hourly rate for this matter, nor have they attempted to establish that other attorneys in this community charge a particular range of rates for real estate transaction services.

Finally, I note that many of Mr. Jackson's services on and after July 30, 2013, were not traditional "legal" services. This is not to say there were unnecessary, or without substantial benefit to the transaction, but that they were of a nature that could have been performed by a German-speaking non-lawyer. Much of Mr. Jackson's time was devoted to his role as Hanzl's agent pursuant to a power of attorney. In that capacity he made decisions, engaged in communications and took other actions that Hanzl herself could have taken had her circumstances so allowed. This proved to be a vitally-important role in this case and clearly benefitted all parties by increasing the final sales price. At the same time, however, the fact that these services were not those that must be performed by a licensed attorney is another factor to consider in determining an appropriate hourly rate.

In light of these circumstances, and with particular consideration of Mr. Jackson's failure to present evidence that an hourly rate of $400 is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," I find that the requested rate should be reduced to $200 per hour for purposes of deducting Mr. Jackson's services as a transaction-related expense.

*Summary*. I have found that Hanzl is entitled to charge 45.0 hours of Mr. Jackson's time at the rate of $200 per hour against the gross sales price as being a

transaction-related expense. That results in an allowable deduction of $9,000.00 for Mr. Jackson's services. When combined with the other transaction-related expenses discussed earlier, the total, allowable transaction-related expenses are $35,791.42. When those expenses are charged against the gross sales price of $275,000, the Colliers are entitled to a credit in the amount of $239,208.58 against the $262,500 that they owe to Hanzl pursuant to the settlement agreement. Thus, at this stage of the case I find that the deficiency still owing from the Colliers to Hanzl is $23,291.42. If judgment were to be entered today, I would recommend that it be entered in that amount.

## C.    *The Remaining Issue (Income Taxes)*

Hanzl requests that entry of the final deficiency judgment against the Colliers be delayed pending resolution of possible income tax consequences from her sale of the West Street Property. I previously found that it is appropriate to calculate the deficiency in two stages. *See* Doc. No. 60. Neither party has objected to that conclusion.

During the January 28, 2014, hearing, Mr. Jackson indicated that Hanzl's income tax liability, if any, may be known by the end of February 2014. I have scheduled a status conference for March 4, 2014, to discuss that situation. Once Hanzl's tax liability is known, the parties will have the opportunity to brief and argue the issue of whether Hanzl may deduct that liability from the gross sales price (and thus increase the amount of the deficiency owed by the Colliers). Because this issue remains to be resolved, my findings herein concerning the Colliers' deficiency are preliminary.

## V.    RECOMMENDED DISPOSITION

For the reasons discussed above, I RESPECTFULLY RECOMMEND that Judge O'Brien enter an order **granting** plaintiff's motion (Doc. No. 58) for entry of a preliminary deficiency judgment by (a) finding that the defendants owe $23,291.42 to the plaintiff pursuant to his prior order (Doc. No. 52) enforcing the parties' settlement

agreement, but (b) deferring the entry of final judgment until a determination is made as to whether that amount should be adjusted to reflect any income tax liability that may accrue to plaintiff due to her sale of the West Street Property.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 31st day of January, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE